## WILLIAM H. SPENCE

*v.*

## GEORGE W. HUCKINS *et al.*

*Opinion filed February 17, 1904—Rehearing denied April 7, 1904.*

1. INSTRUCTIONS—*when failure to give instructions will not reverse.* Failure to give instructions, even though correct, will not reverse, where they are not applicable to the facts of the case or where the other instructions fully advise the jury as to the law.

2. WILLS—*when verdict in a will case must be sustained.* A verdict finding in favor of testamentary capacity must be sustained where the witnesses for the successful party are not only more numerous but have had better opportunity for observing the mental condition of the testatrix than those who testified to the contrary, most of whom made but indefinite and unsatisfactory statements.

3. CONTRACTS—*unambiguous instruments must be given their legal effect.* Instruments which purport to be a contract, a power of attorney and a will, and which are neither indefinite, ambiguous nor uncertain, must be given legal effect according to their purport.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN L. HEALY, Judge, presiding.

Appellant filed his bill in the circuit court of Cook county to contest the will of Margaret·Jane Spence. Said testatrix and the appellant were brother and sister and jointly owned five hundred and ninety-one acres of land in Iroquois county, which they had farmed in partnership for many years. They had both resided upon this farm until about fifteen years prior to testatrix's death, when the appellant married and brought his wife to live with them. Trouble occurred between the wife and sister and appellant moved to an adjoining farm, where he resided until 1900, when he moved to the city of Kankakee. Testatrix had never been married and was sixty-two years of age. Her health had become very poor, and in August, 1900, she went to Colorado, hoping to be benefited by the change of climate. In November, 1900, she accidentally received an injury to her arm and shoulder. On January 7, 1901, she returned to Chicago and

was met at the train by the appellee George W. Huckins, who resided in Chicago with his wife and family and was engaged in business there. He had been blind for many years and had been intimately acquainted with testatrix and appellant from childhood, their mothers being sisters. Testatrix was taken to his house and appellant notified of her arrival. In a day or two he came to Chicago to make arrangements for her future home, and the question arose whether she should live with Huckins in the city, with appellant in Kankakee, or whether appellant should rent her a house there and secure some one to live with and keep house for her. They arrived at no definite conclusion, and on January 15, 1901, testatrix became suddenly and seriously ill. During her illness she was unconscious a part of the time and it was much doubted whether she would live through the attack. During that sickness the question was discussed between Huckins and appellant as to the disposition of her property in case of her death. She gradually recovered, however, and regained the use of all her faculties, but was still unable to leave her bed except to sit up for short periods in a chair. As soon as she grew better the question was again raised with reference to her permanent home and with reference to the disposition of her property. She was anxious to remain in Chicago, where she could be treated by her chosen physician and where she could be attended by a skilled nurse, and the proposition was made that appellant and his wife should move to Chicago into the house of Huckins and take care of her. Huckins insisted that his wife was not able to perform the labor necessary to the proper care of her, and that some such arrangement should be made. These negotiations continued until March 5, when Huckins sent for appellant and informed him that something definite must be done. Appellant replied that testatrix had plenty of money to pay for her care, and that if Huckins would assume the responsibility he should be well paid for his

trouble.   Huckins replied that, as far as money matters were concerned, appellant could not give him more than testatrix had already offered, for the reason that she had made the proposition that if he would care for her during the remainder of her life she would give him, at her death, all her property.   Huckins asked appellant what he thought of this arrangement, and told him to think it over for a day or two and then decide what to do. Appellant returned to his home in Kankakee, talked the matter over with his wife and returned to Chicago on March 7, when he met Huckins, and together they went to the office of an attorney, and there stated to him that they wanted a contract drawn providing for the care of testatrix.   They each furnished to said attorney the data from which the instruments involved in this case were prepared, and he at their request drew three instruments, one of which is in the nature of a contract between testatrix, the appellant and Huckins, and provides, in substance, that testatrix shall will to Huckins all of her property, which will should be absolute and irrevocable, unless he should consent to discharge the agreement upon conditions therein contained.   It also provided that she should convey, by deed or will, to Huckins, before her death, all her property, and that in consideration of said conveyance he should support and maintain her and provide her with medical attention and nursing during the term of her natural life.   He was also, by the agreement, to pay a Mrs. Dolly Finley the sum of $5000 out of the property conveyed to him, and was to aid and assist, in a reasonable manner, George W. Yates, an uncle of testatrix, during his illness, provided the said Yates had not sufficient means of his own to support himself comfortably.   He was also to erect a stone or cement fence around the family cemetery on the Spence farm, and pay to Elizabeth Jones an ample sum to remunerate her for her care of testatrix during her injury in Colorado; also to pay one-half of the price of a monument to

be erected at the grave of testatrix's father and mother and erect a monument over her own grave. The contract finally provides that in case she should desire, at any time during her life, to be released from the terms of the agreement, Huckins should release her upon her payment to him of all the expense, of every kind and nature, including support and maintenance, medicines, doctor bills and nursing, and all money he should have paid out under the contract, and such further sum as should be deemed reasonable compensation for the trouble he had been put to in caring for her. The same contract provides that appellant, who joined in it, should not contest the conveyance so made by will or deed, and that he should be released of all liability, of every kind or nature, concerning said contract or the care of testatrix. Said attorney at the same time drew another instrument purporting to be a power of attorney, which authorized Huckins to collect all of the rents and profits arising from the property of testatrix and to apply the same towards her support and maintenance, giving him full power to manage and control her property. A third instrument was also drawn, purporting to be the last will and testament of said testatrix, Margaret Jane Spence, which willed to Huckins her property, of every kind and character, but contained the same provisions with reference to Mrs. Dolly Finley, George W. Yates and Mrs. Elizabeth Jones, and the erection of a cemetery fence and monuments, stipulated for in the contract.

After the three instruments had been drawn, copies were furnished to appellant and were each read to him by the said attorney. The will, as first read, provided that Huckins should be executor of the same; but appellant objected to that clause, and at his request he was added as one of the executors, and provision with reference to his release from all liability was placed therein at his request. He then signed the contract and it was signed by Huckins. Appellant then returned to his home

in Kankakee and Huckins took the three instruments to his home, where they were each properly executed by the testatrix on the next day. Thirty-one days after that she again became suddenly ill, and died April 10, 1901. After her death the will was filed for probate in the probate court of Cook county by appellant and Huckins and duly admitted to probate, whereupon they were both appointed executors thereof. An inventory of the estate was filed and they continued as executors until July, 1902, when appellant resigned and filed this bill to contest said will.

The bill was filed upon the theory that the three papers above described, being executed at one and the same time, constituted, in law, but a single instrument, and were in legal effect but an equitable mortgage. That proposition or theory was submitted to the court below and decided adversely to appellant, the holding there being that the first instrument was a simple contract, the second a mere power of attorney, and the third the last will and testament of the deceased. An issue of fact was then made on the allegation by the complainant that at the time of the execution of said papers the testatrix was of unsound mind and unduly influenced by said Huckins and his wife, and under duress, which issue was submitted to and tried by a jury and a verdict rendered in favor of the validity of the will. A decree was entered by the trial court in accordance with the verdict, to reverse which this appeal is prosecuted.

Appellant raises substantially the same question here as was urged in the trial court as to the construction of said three instruments in writing; also, that the court erred in the refusal of certain instructions asked by the complainant, and in refusing to set aside the verdict as contrary to the evidence.

D. H. STAPP, and H. L. RICHARDSON, for appellant.

WING & WING, for appellees,

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first question for our determination is the construction to be placed upon the three instruments mentioned in the foregoing statement. The evidence in the case is very clear on this point, and shows that said instruments were executed for the purpose of providing for the care and maintenance of said testatrix during her life. Offers had been made to appellant that if he would arrange to care for her as she desired he should have her property. This he declined to do, and the instruments in question were drawn for the purpose of inducing and enabling appellee George W. Huckins to do that which he, the appellant, could not or would not do. The contract, power of attorney and will admit of no construction. They are neither indefinite, ambiguous or uncertain. The first states the terms under which said Huckins is to care for the testatrix. The second gives him power and authority to manage the property of the testatrix during her lifetime, and the third is, to all intents and purposes, a legally executed last will and testament by Margaret Jane Spence. The chancellor could do no more than to so construe and give them legal effect. Argument can make this no clearer.

It is next insisted that the trial court erred in refusing to give three instructions asked on behalf of complainant, but no specific reasons are set forth why they, or either of them, should have been given. We have examined them so far as we have been able to identify them from the argument of counsel, and are convinced that, in so far as they state correct principles of law, they were inapplicable to the facts of the case, and also that the jury was sufficiently instructed as to the law of the case, and therefore no substantial error was committed by their refusal, even if they had been otherwise correct.

Another ground of reversal here urged is, that the verdict of the jury sustaining the validity of the will is

contrary to the evidence, the contention being, that the weight of the testimony sustains the averments of the bill that the testatrix was, at the time of the execution of that instrument, of unsound mind and memory and that she was under the undue influence of appellee Huckins and his wife. This is a voluminous record of over one thousand pages of evidence, the trial having lasted about a week. We have made a painstaking examination of the evidence as presented, both in the abstract filed by appellant and the additional abstract filed on behalf of appellees, and are clearly of the opinion that the verdict of the jury and decree of the court below are abundantly supported by the testimony. In the number of witnesses the preponderance of the evidence is with the appellees, and those who testified to the soundness of mind and memory of the testatrix had better opportunities for knowing and observing her mental condition than those who testified to the contrary. As an instance of this, Esther M. Gillett, the nurse who waited upon her in her last illness, was called as a witness on behalf of appellant, who appears to have been entirely disinterested and impartial, though she was appellant's own witness, testified that in her opinion Miss Spence was of sound mind and under no undue influence or restraint at the time she signed her will. John Barlin, also a witness introduced on behalf of appellant, testified that in his opinion she was of sound mind, and the evidence of the two physicians who attended her in her last illness, Dr. White and Dr. Egert, both testified to the fact that she was fully competent to make a will and in no way unduly influenced. Of those expressing a different opinion, some, at least, gave but indefinite and unsatisfactory statements, such as that "she was not a very sound-minded person," etc.

Much stress is placed by counsel for appellant on the fact that appellee Huckins, by the will in question, obtains many thousand dollars in money and property

for wholly inadequate services rendered, and this is attempted to be construed into evidence of undue influence and want of mental capacity in the testatrix at the time the will and the contract were entered into. In the first place, at that time it was not, and could not be, known how long she would survive and he. be required to provide for and take care of her. All of the money and property might be consumed during her lifetime, and therefore it cannot be said that the transaction is evidence of her unsoundness of mind, or that she was improperly influenced in entering into the arrangement. Moreover, appellant was offered the opportunity of having the property if he would assume the burden of her care, maintenance and support, and declined to accept it. He considered the matter fully with his sister, his own wife and appellee Huckins. He was present at the time the papers were drawn up, and at his own request was made one of the executors of the will which he now seeks to impeach. A clause was also inserted in the contract at his request relieving him from all liability after her death, and he afterwards wrote a letter to Colorado, in which he stated that the property had been disposed of according to the wishes of his sister. After her death he made an effort to effect a settlement with Huckins for a division of the property. When the evidence is impartially considered it leaves little doubt in the mind that if his sister had continued to live through many years and had been cared for by Huckins according to the terms and conditions of the contract and will there would have been no attempt on appellant's part to regain the property. It was her sudden and unexpected death which, it seems to us, prompted the bringing of the present suit.

In the preparation of the abstract filed by counsel for appellant his cross-examination was almost entirely omitted, to supply which omission, as well as other evidence left out of appellant's abstract, an additional

abstract was filed by counsel for appellee. The cross-examination of appellant himself, as shown by the additional abstract, clearly shows that all the transactions called in question by his bill were entered into between his sister and Huckins with his full knowledge and consent, and that he must at that time have considered her as possessing testamentary capacity and the ability to rationally enter into the contract which she signed. We are clearly of the opinion that the case made by his bill, and the testimony offered in support of it, fall far short of entitling him to the relief prayed.

The decree of the circuit court being in conformity with this view, will be affirmed.          *Decree affirmed.*